THOMPSON, J.
This is an action to set aside a sale of all of the oil, gas, and mineral rights in and to and under 120 acres of land situated in the parish of Ouachita, on the ground of lesion beyond moiety. An exception of no cause of action was sustained, plaintiff’s suit dismissed, and he appeals.
The sale was executed by plaintiff to defendant Oscar Nelson on. March 19, 1919. The price paid was $900 cash ánd one-eighth interest in and to all of the oil produced or saved from said land.
The petition alleges, in substance, that the „land is situated in the heart of the gas field, with producing wells of 15,000,000 to 30,000,-000 cubic feet of gas per day all around it, and that there is now one on the very land producing 16,000,000 cubic feet of gas per day; that the said gas well on the said land was completed about December 23, 1921; that the valué of the mineral rights on and under the land was well worth the price of $50,000; that petitioner was ignorant of such things and had never had any experience, but that said Oscar Nelson had spent his life in such work; that Nelson has taken out of the land 555,222,000 cubic feet of gas and out of this gas there has been made at least 666,261 pounds of 'carbon, worth at least 15 cents per pound, and that out of the gas has been extracted 60,000 gallons of gasoline worth 18 cents per gallon.
It is further alleged that Nelson transferred all of his right, title, and interest to the Cosmos Carbon Company, a corporation organized and domiciled in' West Virginia; that this corporation is a necessary party to this suit.
In an amended petition it is alleged that Oscar Nelson, plaintiff’s vendee, is the head and ruling spirit of the Cosmos Carbon Company, and that Nelson transferred the property in order to attempt to defeat the plaintiff out of his rights; that the Cosmos Carbon Company is the same person in the eyes of the law as Oscar Nelson; that the Cosmos Carbon Company had knowledge of the defects alleged and could not have taken the property in good faith.
There are at'least two well-grounded reasons why plaintiff’s petition cannot be sustained as showing a legal cause of action. First, because the thing, the subject of the sale, cannot be regarded as one falling within the terms of the law which affords relief on the score of lesion; its 'inherent nature and character being such,as not to be susceptible of having an intrinsic definite and fixable value. Second, because the plaintiff’s petition alleges that his vendee had parted with all of his interest in the mineral rights to a third party. ■ j
[1] 1. When the plaintiff sold to Nelson all of the oil, and gas beneath the surface of his land, he conveyed no title of ownership to any specific thing, separate and distinct from the soil, but merely the fight to drill, capture, and reduce to possession such quantities of the oil and gas as might be found under the ground. The right thus conveyed has been defined to be, or rather is likened to a real or incorporeal right — a right of servitude, in the sense that it is lost for nonuser or nonexercise within a period of 10 years. Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 856, 91 South. 207, and cases therein collated.
Civil Code, art. 1860, defines lesion to be the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given *812 for the injury is founded on its being the effect of implied error or imposition, or, as said by Mr. Justice Bullard in Copley v. Flint, 1 Rob. 125:
“ * * * A relief founded upon the idea that the vendor has been driven by his necessities to malee a sacrifice so enormous, as to give rise to the presumption that he has been'hardly dealt by.”
In article 1861, Civil Code, it is provided that no relief will be given a person of full age and who is under no incapacity against the effect of his voluntary contracts, on account of such implied error or imposition, except in the two following cases:
(1) In partitions where there is a difference in the value of the ‘portions to more than the amount of one-fourth to the'prejudice of one of the parties;
(2) In sales of immovable property, the vendor may be relieved, if the price given is less than &ne-half of the value of the thing sold.
Article 1862 provides that lesion can be alleged by persons of full age in ho othersale than one for immovables, in which is included whatever is immovable by destination. It is, argued by counsel for the plaintiff that, article 471, Civil Code, makes a servitude an immovable, and, since the jurisprudence of this state has declared the right to extract oil and gas from the land to be a servitude, the action of lesion will Tie as in cases of immovable property provided for in the second clause of article 1861. The argument assumes that every kind of immovable is brought under or falls within the terms of the article conferring the-action of lesion upon a vendor. But this is not true. While it is true that a servitude established on an immovable estate is declared to be an immovable, it by no means follows that such a servitude as here involved — which is also declared to be a real and an incorporeal right—is to be regarded as an immovable in the sense in which the word immovable is used in article 1861 of the Code.
There are three classes of immovables: Immovables by nature, immovables by destination, ahd immovables by the disposition of the law. When article 1862 of the Code restricted the action of lesion to immovables, it meant immovables which are such by their mature and not such as are made immovable by disposition of the law. This is made manifest by the special inclusion with the immovable by nature all immovables by destination, and the implied exclusion of all immovables made such by the disposition of the law. We hardly think that the language of article 1862 can be so construed as; to extend the action of lesion to every real or incorporeal right and to every character of intangible property made immovable by the disposition of the law.
Article 470 of the Code declares that incorporeal things, consisting only in a right, are not of themselves strictly susceptible of the quality of movables or immovables; nevertheless they are placed in one or the other of these classes, according to the object to which they apply. And article 471 provides that the following are considered as immovables from the object to which they apply:
“A servitude established on an immovable estate.”
But “all things corporeal or incorporeal, which have not the character of immovables by their nature or by the disposition of the law, according to the rules laid down in this title, are considered as movables.” C. C. art. 475.
It thus appears that the servitude referred, to in article 471 as being an immovable is one which is established" on an estate. Its immovable character results from the nature of the object to which it is attached. It becomes a part of the estate and follows the estate. It can hardly be contended that such a servitude, though declared to be an immovable, would be subject to the action of lesion, independent of the estate to which it *814 was attached or on which it was established. Even so, with respect to. an immovable by destination, as long as it is attached to an immovable by nature it is subject to the action of lesion as á part of the immovable to which it is attached, but the moment the immovable by destination is detached from the immovable, it becomes a movable, and is not subject to the action.
The right to extract oil and gas from the soil when conveyed by the owner of the soil is not a right or servitude on or in the land in the sense that it attaches to and follows the ownership of the land. While the exercise of the right is a burden on the land, the right itself is separate and distinct from the land and does not follow the ownership of the land.
But, independent of the considerations stated, as we said in the beginning, the inherent nature and character of the right to extract oil and gas from the soil is such as not to be susceptible of having an intrinsic, determinable, and fixable value. The element which enters into the valuation is too uncertain, conditional, and contingent. At most any value which may be fixed on the right is contemplative, speculative, and conjectural, not to say fanciful and theoretical.
The seller who sells such rights, and the buyer who buys, does so with a speculative intent, and it is a matter of common knowledge that every real estate owner uses his own judgment in estimating the sale value of his property. In the admitted speculative nature of the intangible right it is impossible that there could be any fixed and dependable valuation. The price may be at the very lowest today and by “leaps and bounds” reach the very peak of prices tomorrow, dependent on the production or nonproduction of oil and gas in the neighboring territory.
After all is said the seller usually gets .the best price in cash that he can get with the hope of getting a royalty in case oil or gas is discovered, and the buyer paying the price in cash estimated by the seller, assumes all of the chances and hazards of his undertaking. Had there been no gas found in the land in question the plaintiff would doubtless have been perfectly satisfied with the cash price he received, but, gas having been discovered, he now seeks an additional profit.
[2] But there is another consideration which operates against tl\e plaintiff. The contract provides that he is to receive one-eighth of all of the oil discovered and produced from the land. The right to develop the land will not expire by the ^imitation of the statute until March 18, 1929. It may be that during this period oil will be discovered in paying quantities and the royalties received by the plaintiff will more than satisfy his anticipated profits. At all events, the hope of royalties entered into and became a part of the consideration which induced the plaintiff to part with the mineral rights, and this furnishes another reason why the sale cannot be avoided for lesion.
[3] 2. It is alleged in the petition that the defendant Nelson transferred all of his right, title,x and interest in the mineral rights to the Cosmos Carbon Company, a corporation organized and domiciled in West Virginia. It is well settled that the action of lesion does not extend to third persons purchasing in good faith. Snoddy v. Brashear, 3 La. Ann. 569; Morgan v. O’Bannon, 125 La. 367, 51 South. 293.
The plaintiff seeks to avoid the effect of this rule by alleging that Nelson, his vendee, was the head and leading spirit in the corporation, and that the two were one and the same. But this is a mere conclusion of the pleader. He alleges that the corporation named'was duly organized under the laws of West Virginia, and he alleges no fact to show that Nelson was the corporation, and *816 as a matter of law Nelson could not be the corporation. The corporation must therefore be regarded in law as a distinct and separate entity, and, for the purposes of this suit, a third person.
[4] The amended petition alleges that Nelson sold the property in order to attempt to defeat the plaintiff out of his rights, but there is no allegation of fraud or bad faith against the Cosmos Carbon Company. It is true that it is alleged that the said company “had knowledge of the defects alleged (referring wé presume to the inadequacy of price), and could not have taken the property 'in good faith.” But this allegation was not sufficient, as was held in the Morgan-O’Ban-non Case, supra. The court in that case said:
“That knowledge of itself is not sufficient to render an owner, who is an innocent third person, liable to an action of lesion in a purchase of property for value which his vendor bought for less than one-half of its value.”
[5] The last contention of plaintiff is that, under his alternative plea, he is entitled, if the sale is not annulled, to one-eighth of the gasoline which Nelson has produced from the land, and which amount he places at $1,-.350. The sale which is attached to plaintiff's petition only obligates the vendee to deliver to the vendor one-eighth part of all oil produced and saved from the land. There is nothing said in the act with reference to a delivery to the plaintiff of any part of the gas or of 'gasoline or of carbon produced from the gas. We know of no law and have been referred to none which would require the delivery of gasoline when the obligation called for the delivery of oil in its crude or natural state.' Gasoli'ne may be of the same generic species or family of minerals as that of oil, but it cannot be classed as oil or substituted for oil within the intent and meaning of the word “oil” as used in the contract of sale.
It is for the foregoing reasons ordered that the judgment appealed from be affirmed, at the cost of plaintiff and appellant.