**LUCAS, Commissioner of Internal Revenue, v. BAUCUM.**

No. 6043.

Circuit Court of Appeals, Fifth Circuit.

June 22, 1931.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., C. M. Charest, Gen. Counsel Bureau of Internal Revenue and E. Riley Campbell, Sp. Asst. Bureau Internal Revenue, both of Washington, D. C., and A. H. Conner, Sp. Asst. to the Atty. Gen., for petitioner.

Ralph W. Baucum, of Shreveport, La. (Craig, Bolin & Magee, of Mansfield, La., on the brief), for respondent.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Petitioner comes here complaining of the finding and order of the Board of Tax Appeals that money, to wit, $43,000 paid to respondent's husband as the purchase price of a 3/32 mineral interest which respondent owned in land located in the Haynesville oil field in Louisiana, was community property, respondent insisting that the mineral interest was though incorporeal an interest in the land owned by respondent as her separate property, and that the cash received in lieu of it was therefore likewise so. The facts are undisputed. They are set out fully in the board's findings of fact 17 B. T. A. 1312. Summarized and briefly stated, they are:

Respondent and her husband were married in Louisiana in 1900 and have lived together there as husband and wife since that date, during all of which time the husband has acted as the manager of the community of acquests and gains which has during all of that time existed between him and his wife. In 1906, respondent inherited from her father a tract of farm land in Louisiana. In 1921, oil was discovered near the farm and respondent, with the aid and assistance of her husband, leased the entire property to oil companies, reserving a 1/8 or 4/32 mineral interest.

Thereafter, in the same year, respondent executed instruments in the form of deeds, wherein she granted subject to the oil lease,

not interests in the royalty reserved in the lease, but mineral rights. In addition to the $43,000 from the sales of mineral interests, respondent received in 1922 royalty checks from the oil companies on account of the 1/32 interest still owned by respondent.

Details aside, the facts found by the board are sufficient to support the conclusion that the property in question was under the full management of the husband, both during the time that he farmed it in person and by tenants, and during the time that he busied himself with negotiating leases on it, making sales of the mineral interests and collecting and handling the proceeds. Respondent and her husband filed separate income tax returns for 1922. Respondent reported as her own income, not only the $43,-000 received from the sale of the 3/32 mineral interest, but that received as royalty from the 1/32 interest not conveyed by her. Respondent was allowed for depletion purposes against the sums returned as royalty more than the amount received, and she and her husband testified that they did not claim the $43,000 as community because they understood they would have a depletion allowance more than sufficient to absorb it. When this was denied them, they set up the claim which before the board and here is the subject of this controversy, that the sums received from the sale of mineral interests were not her separate, but were community, property, and that they should be returned one-half each by her and her husband.

The board found that the deeds had operated as sales of property, that the profits from them were taxable as capital gains, section 202, Revenue Act of 1921 (42 Stat. 229); Appeal of Anna Taylor, 3 B. T. A. 1201, but that the proceeds of the sale were fruits of the wife's paraphernal property under the administration of her husband, and hence community property, and it sustained the claim of respondent that she and her husband might each return one-half thereof.

The courts of Louisiana have not, as we are advised, ruled upon the precise point here involved, the status as between the separate and the community estates of the proceeds of the sale by the wife of mineral interests in her separate land, nor have the courts of the state discussed the character, whether separate or community, of receipts from oil from such property, whether these receipts are from royalties, from bonuses, or from the sale of the mineral interests itself. The courts of Texas, in which state the fugacious theory of oil is not accepted, and leas-es are regarded as substantial sales of minerals in place and not as in Louisiana, mere grants of the right to extract the oil and take it when extracted, have held that oil royalties from land, the separate property of either spouse, remains separate property. Stephens v. Stephens (Tex. Civ. App.) 292 S. W. 290, 291; Ferguson v. Commissioner (C. C. A.) 45 F.(2d) 573.

Petitioner insists that though the legal nature of mineral interests and the legal effect of leases, sales, or reservations of such interests are differently stated in Louisiana than in Texas, the substantial, the practical result upon the disposition of the real interest involved, the right to the minerals, of leases, sales, and reservations of such interests are in both states substantially the same. Logan v. State Gravel Co., 158 La. 105, 103 So. 526; Bodcaw Lbr. Co. v. Cox, 159 La. 810, 106 So. 313. He declares that whether a mineral right be denominated as in Texas, a corporeal right in the minerals, or as in Louisiana, a right to extract such minerals from the soil, "an incorporeal right—a real right or servitude" (Bodcaw Lbr. Co. v. Cox, 159 La. 810, 106 So. 313, 314), it is in each state a thing owned, a species of immovable real property, in one state property in oil, in the other property in a servitude, a real right, a right to enter the land and take the oil, in each just as definitely real, immovable property as the land itself. That in each state, in Louisiana as in Texas, this ownership, whether you call it title in the oil, or the right to take it when conveyed, is "separate and distinct from the land and does not follow the ownership of the land." Wilkins v. Nelson, 155 La. 807, 99 So. 607, 609, and he who has the right in Louisiana, has "a standing in court to vindicate and protect" it even to the extent of a decree "quieting it in its possession of all of the oil, gas, and other mineral rights in and to the property in question." Bodcaw Lbr. Co. v. Cox, 159 La. 810, 106 So. 313, 314.

Respondent, conceding that the courts of Louisiana have not directly determined the matter at issue here, insists that the state of the law in Louisiana upon the character and quality of an oil interest in the light of the jurisprudence of Louisiana upon community and separate property makes it clear that both royalties received from oil wells and the proceeds of their sale are fruits of the land, and fall into the community.

Assuming, but not deciding, that if the question here were as to the status of royalties reserved in oil leases, that is, returns to

respondent as rents paid her for the right to take the minerals from her land, or even as to the status of the proceeds from the sale in bulk at an estimated figure of the royalties to be received, that the law in Louisiana might be different from that in Texas. It is perfectly clear, we think, that the facts presented here defeat respondent's claim. Here the respondent owning as her separate property the lands and minerals, first through the medium of a lease conveyed to the extent of 7/8 the real incorporeal right to extract the minerals from the land, Logan v. State Gravel Co., 158 La. 105, 103 So. 526, 527; Wilkins v. Nelson, 155 La. 807, 99 So. 607; Bodcaw Lbr. Co. v. Cox, 159 La. 810, 106 So. 313, 314, reserving in herself, in separate and distinct ownership, 1/8 of the minerals in and under the land (Bodcaw v. Cox, supra). Thereafter, she parted this time, not by lease, but by sale having however the same effect, (Logan v. State Gravel Co., 158 La. 105, 103 So. 526) with 3/32 of her mineral rights, vesting the purchaser with the incorporeal right, the real right or servitude, not as she had theretofore herself owned it, as a part of and appurtenant to the land, but separate and distinct from the land. Wilkins v. Nelson, 155 La. 807, 99 So. 607. Thus, in effect, by two separate conveyances she sold to various purchasers, not an interest in royalties, but 31/32 of her mineral rights in the land. Leydig v. Comm. (C. C. A.) 43 F.(2d) 494; Bellport v. Harrison, 123 Kan. 310, 255 P. 52.

Certainly it would not be contended by respondent that if she had sold the land without reservation of the minerals she had thereby converted her separate property into community; nor had she sold her land reserving her minerals, or her minerals reserving her land, would it be contended by her that either of these transactions would have converted the proceeds from separate to community. It cannot be any more contended that because the minerals were disposed of by fractional sales such a result would come about.

Whatever then may be the law, which we do not at all undertake to decide, as to the status, whether separate or community property, of royalties which respondent received from her lease, or as to the status of the proceeds if respondent, instead of selling her mineral interests had merely sold the right to receive the royalties to accrue under the lease, we think it perfectly plain that upon no reasonable theory can a sale, as here, by the wife of a part of her mineral interests operate to convert separate into community

property, and that the ruling of the board has the effect of a spoliation of the wife's property in favor of the community, upon facts which do not at all sustain it.

The petition for review is granted; the judgment of the board is reversed.