# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-940


**TAMMY RENEA MARTIN HARRUFF, ET AL.**

**VERSUS**

**RICHARD B. KING, ET AL.**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 82954
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.


**REVERSED.**

**Henry W. Bethard, V**
**Bethard & Bethard, L.L.P.**
**Post Office Box 1362**
**Coushatta, Louisiana 71019**
**(318) 932-4071**
**Counsel for Plaintiffs/Appellees:**
  **Tammy Renea Martin Harruff**
  **Amy Lynn Bilodeau**
  **Edgar Cason**

**Billy R. Pesnell**
**J. Whitney Pesnell**
**W. Alan Pesnell**
**The Pesnell Law Firm**
**Post Office Box 1794**
**Shreveport, Louisiana  71166-1794**
**(318) 226-5577**
**Counsel for Defendants/Appellants:**
    **Renee Poole King**
    **Kyle King**

**Ronald E. Corkern, Jr.**
**Corkern & Crews**
**Post Office Box 1036**
**Natchitoches, Louisiana  71458-1036**
**(318) 352-2302**
**Counsel for Defendants/Appellants:**
    **Renee Poole King**
    **Kyle King**

**William F. Kendig**
**Rice & Kendig**
**1030 Kings Highway**
**Shreveport, Louisiana  71104**
**Counsel for Defendants/Appellants:**
    **Renee Poole King**
    **Kyle King**

**Edwin Henry Byrd, III**
**Pettiette, Armand, Dunkelman,**
**Woodley, Byrd & Cromwell**
**Post Office Drawer 1786**
**Shreveport, Louisiana  71166-1786**
**(318) 221-1800**
**Counsel for Plaintiffs/Appellees:**
    **Tammy Renea Martin Harruff**
    **Edgar Cason**
    **Amy Lynn Bilodeau**

**KEATY, Judge.**

Defendants appeal the judgment of the trial court rescinding the sale of immovable property on the basis of lesion beyond moiety. For the reasons set forth herein, we reverse.

## ISSUE

This case presents the question of whether Louisiana law allows for the inclusion of the speculative value of mineral interests or rights in and to immovable property in determining the fair market value of such property for the purpose of rescinding the sale of the property on the basis of lesion beyond moiety.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs, Tammy Renea Martin Harruff and Amy Lynn Bilodeau (hereafter the Sisters), are siblings and the heirs of decedent, Bobby Carlisle. Edgar Carson, also a Plaintiff/Appellee, is the subsequent purchaser of the subject property as will be more fully discussed herein. The Sisters inherited an undivided interest in two tracts of land located in Natchitoches and Red River Parishes. The property is situated within the area of the Haynesville Shale.[1]

Approximately one year after the inheritance, the Sisters sold their undivided interest in the two tracts to Defendants, Richard King,[2] Renee King, and Kyle King (Kyle). On May 26, 2009, the Sisters entered into a buy and sell agreement with Defendants regarding the property (King buy and sell agreement). On July 21, 2009, the Sisters and Defendants executed a cash sale deed (King deed),

---

[1] Haynesville Shale is the name for a rock formation that underlies parts of east Texas, southwest Arkansas, and northwest Louisiana containing vast quantities of recoverable gas and is an area of extensive oil and gas exploration.

[2] Richard King was one of the original defendants in this matter. However, he died in 2011, and his wife, Renee King, was substituted as administrator of his estate.

transferring ownership of the Sisters' interests in the property to Defendants for the amount of $175,000.00. The Sisters' undivided interests conveyed in the King deed included all timber and minerals. Defendants, two of whom are attorneys, prepared both the buy and sell agreement and the cash sale document. The description of the property in the buy and sell agreement differs from the description in the King deed. The description in the buy and sell agreement was taken from summaries contained in the tax assessor's records for each parish. The King deed identifies the property as being located in Range 9 wherein the property at issue is located in Range 8. Defendants contend the misidentification was simply a typographical error and that the same inadvertent error had actually happened previously and was subsequently corrected.

Approximately six months after the execution of the King buy and sell agreement, the Sisters sold the Natchitoches Parish tract to Plaintiff, Cason, for $375,000.00. On November 30, 2009, Cason and the Sisters entered into a buy and sell agreement (Cason buy and sell agreement) and, on the same day, executed a cash sale deed (Cason deed) relative to their undivided interest in the Natchitoches Parish property. Thereafter, Plaintiffs filed a lawsuit, alleging that the sale of the property to Defendants should be rescinded due to lesion beyond moiety. Plaintiffs also sought judgment to quiet the title on the Natchitoches Property subsequently sold to Cason. After filing their original action, Plaintiffs amended their petition, alternatively seeking to rescind the sale to Defendants based on fraud allegedly committed by Defendant, Kyle. Defendants answered Plaintiffs' petition and reconvened, alleging bad faith on the part of the sellers and seeking to be declared the owners of the Sisters' undivided interests in the two parcels of immovable

2

property. Defendants also sought a reformed deed and a judgment recognizing that the Cason deed is null and void.

Prior to trial, the trial court was advised that a lawsuit had been filed in federal court by Defendants against the Sisters based on diversity of citizenship, fraud, and the same set of facts as presented in the trial court. Diversity was established insofar as the Sisters are domiciled in Waldo, Arkansas. Cason, a Louisiana resident, was not named as a Defendant in the federal suit. The Sisters were not served with the federal lawsuit until approximately fifteen months after their original petition was filed in the present case. In its reasons for ruling, the trial court noted the filing of the federal action indicating it was "important to include mention of this suit, as it appears to this Court to have impacted the handling and trying of the present case in state court, as well as the motives and credibility of the parties."

After trial on the merits, the trial court granted a rescission of the sale on the basis of lesion beyond moiety. Consistent with La.Civ.Code art. 2591, the trial court judgment provided Defendants with thirty days to exercise the option of supplementing their original purchase price in the sum of $687,061.08 plus legal interest to retain title to the Sisters' undivided interest in the property at issue.

In its written reasons for ruling the trial court stated that, during the time of the sale of the property at issue, other mineral deeds and leases around the property ranged from approximately $5,000.00 to $25,000.00 per acre, depending on the location of the property to the center of the Haynesville Shale.

Defendants appeal, alleging six assignments of error:

(1)  The trial court "committed legal error and manifest error by allowing the valuation of speculative, un-proven, non-

3

producing, un-leased, un-unitized, and untested gaseous minerals";

(2) The trial court committed legal error and manifest error by valuing the property as a mineral-producing property rather than a recreational property by failing to recognize the problems in the Coutret report;[3] and when it valued the property in a state different than it was in at the time of the challenged transaction;

(3) The trial court committed an error of law and manifest error in its finding of fact when it mixed the valuation reports of two experts and added a purported mineral valuation to that report;

(4) The trial court committed an error of law when it denied and dismissed Defendants' claim to have the Cason deed declared null and void and to reform the King deed;

(5) The trial court committed legal error and manifest error in its ruling on Plaintiffs' fraud claims; and

(6) The trial court committed legal error in admitting and excluding certain evidence.

## STANDARD OF REVIEW

"Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect." *Dugan v. Gen. Servs. Co.*, 01-511, p. 3 (La.App. 3 Cir. 10/31/01), 799 So.2d 760, 763, *writ denied*, 01-3327 (La. 3/15/02), 811 So.2d 942. When a "trial court's decision was based on its erroneous application of law . . . its decision is not entitled to deference by the reviewing court." *Id*. When an appellate court finds a reversible error of law, the appellate court "must redetermine the facts de novo from the entire record and render a judgment on the merits." *Id*.

Findings of fact are reviewed under the manifest error rule. *Cormier v. Comeaux*, 98-2378 (La. 7/7/99), 748 So.2d 1123. When the review of factual

---

[3] The Coutret report is an appraisal regarding the fair market value of the undivided, undeveloped mineral interest in the Sisters' property provided by Plaintiffs' expert witness, Henry Coutret.

4

findings of the trial court are at issue, the following two-part analysis applies in order to reverse the fact finder's determinations: (1) a reasonable factual basis must not exist in the record for the finding of the trial court and (2) the record must establish that the finding is manifestly erroneous or clearly wrong. *Id.* Great deference is given to the trial court's determination of the credibility of witnesses, except where "documents or other objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable finder of fact would not credit the witness's story." *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989).

## LAW

Rescission for lesion beyond moiety is codified at La.Civ.Code art. 2589, which provides:

> The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable. Lesion can be claimed only by the seller and only in sales of corporeal immovables. It cannot be alleged in a sale made by order of the court.
>
> The seller may invoke lesion even if he has renounced the right to claim it.

## <u>Assignment of Error Number One</u>

In their first assignment of error, Defendants contend that the trial court "committed legal error and manifest error by allowing the valuation of speculative, un-proven, non-producing, un-leased, un-unitized, and untested gaseous minerals in this case."

The trial court found that the fair market value of the property at the time of the execution of the King buy and sell agreement was $862,061.08.[4] The trial

---

[4] According to the reasons for ruling, the trial court found that the value of the Sisters' 35.764% interest in land and timber, discounted by 40%, was $188,180.08. The trial

5

court noted that Defendants paid $175,000.00 for the property. Based upon its value of the property, the trial court concluded that the sale was lesionary and rescinded the sale accordingly.

In its reasons for ruling, the trial court cited the Louisiana Supreme Court's decision of *Jones v. First National Bank, Ruston, Louisiana*, 215 La. 862, 41 So.2d 811 (1949), wherein the supreme court held that mineral interests or rights are to be included in the value of the property, so long as both the land and the mineral interests are sold together. In *Jones*, the plaintiff was credited $7.72 per acre upon transferring his property to the bank in satisfaction of a debt. The evidence in *Jones* established that other landowners in the area were paid as much as three times more per acre for their land and minerals than the credit given the plaintiff. The evidence also showed that the bank executed two mineral leases on the plaintiff's property shortly after the transfer wherein the bank was paid $10.00 per acre exclusive of delay rentals, resulting in the bank realizing $880.00 in the subsequent two years.

In the instant matter, the trial court stated in its reasons for ruling:

> The calculation of the value of the Property for purposes of lesion beyond moiety should include the value of the **<u>unsevered</u>** mineral rights as long as the transaction is not a transfer of mineral rights alone.
>
> A landowner's right to minerals is a part of the bundle of rights as the owner of a corporeal. The Court finds that unsevered mineral interests or rights can and should be used to calculate the fair market value of the Property as a whole. Unsevered mineral interests, or rights, are owned as a part of the ownership of the land and constitute a part of the corporeal immovable. If they increase the value of the land alone, they should be considered.

---

further found that the value of the Sisters' 35.764% interest in the unsevered, undeveloped mineral interest was $673,881.00. The trial court added the two amounts together which equates to $862,061.08.

6

We agree with the trial court that *Jones* stands for the proposition that mineral rights are included in the value of the property as long as both the land and the mineral interests are sold together. In *Jones*, the plaintiffs met their burden of proof by providing substantial evidence regarding the value of the property at the time of the transfer.

A seller seeking to rescind a sale on the basis of lesion must prove the value of his property by "*clear and exceedingly strong*" evidence. *Pierce v. Roussel*, 227 La. 438, 451, 79 So.2d 567, 571 (1955) (quoting *Morris v. Kleinpeter*, 197 La. 758, 2 So.2d 203 (1941)). The clear and convincing standard "requires that the existence of the disputed fact be *highly probable*, that is, much more probable than its nonexistence." *Louisiana State Bar Ass'n. v. Edwins*, 329 So.2d 437, 442 (La.1976) (quoting Sanders, The Anatomy of Proof in Civil Actions, 28 La.L.Rev. 297, 304 (1968)). The evidence presented by Plaintiffs herein does not meet the evidentiary standard of "clear and exceedingly strong."

In the case at bar, Plaintiffs rely on the testimony of their expert, Henry Coutret, to prove the fair market value of the mineral interests of the property at issue. If Coutret's testimony is not accepted by the trial court, the Plaintiff's action for lesion must fail. Coutret was asked to explain the factors he would use to determine the fair market value on an undeveloped mineral tract. Coutret testified that "[t]he value of any mineral tract developed or undeveloped is based on the **possibility of future royalty revenue** or if un-leased, the **possibility of a lease bonus** . . . for an undeveloped tract, of course that would be the case." (Emphasis added.) On cross-examination of Coutret, the following colloquy took place:

Q.   Now your report relies on a number of assumptions. . . .

. . . .

7

Q.    And you described many of those assumptions . . . earlier when you talked to Mr. Bethard.  One of those assumptions is that the property had a 90% chance of being leased within two years, correct?

A.    Correct.

Q.    And then you made assumptions based on Haynesville production from other wells and I remember you testified that you discounted some of those things, took into [account] some risk factors and that sort of thing.  But, all your assumptions fall back to one thing; they assume a production of the gas from that property, correct?

A.    They're based on the assumption of production.  But actually what we're calculating is the fair market value of that mineral ownership at the time.  It's based on the potential production once it's corrected with a probability it'll be drilled and actually be completed.  So I'm not . . . it's not based on the production.

Q.    You, your report measures a particular bonus correct?  An assumed bonus . . .

A.    Correct. Yes. Correct.

. . . .

Q.    . . . on a, you basically have a report that has an assumed lease does it not?

A.    That's correct.

Q.    It assumes a bonus and it assumes a production that results in a royalty, correct?

A.    That's correct.

Q.    That is how you came to your valuation numbers.

A.    That is the economic method or cash flow method.  That is correct.

Q.    And if any one of those assumptions doesn't bear out, then your value goes to zero, does it not?

A.    Well because a probabilistic approach has been taken to this, . . . if it doesn't bear out at all, . . . if it's never produced, the value would be zero.  But nobody thought it was gonna be, go to zero at this point in time.  There was a reasonable expectation of making a profit and that's why these minerals have value.  And that is the, what I was

8

trying to estimate, of course was fair market value or market value, the reasonable expectation of market value if you sold those minerals at that time.

Coutret's testimony reflects that his methodology for determining the value of Plaintiffs' mineral interests is based upon assumptions and possibilities. His testimony is not "clear and exceedingly strong" evidence that is required to prove lesion beyond moiety. His testimony is further called into question considering that Plaintiffs' property is situated outside of the active portion of the Haynesville Shale and that Plaintiffs had not even been approached to lease their mineral interests.

The speculative nature of minerals has long been recognized by our courts. *Wilkins v. Nelson*, 155 La. 807, 99 So. 607 (1924). Once landowners, who leased their property for mineral exploration in the Haynesville Shale area, became aware of the shale's value, they filed lawsuits against the lessees. The lawsuits raised various issues including fairness of the contracts, signing bonus amounts, error as to the cause of such contracts, and fraud due to the failure of the mineral lessees' to share their knowledge of the shale with the landowners. Many of those cases were decided against the landowners. Since the issue in those cases dealt with only the sale of mineral interests and such sales are not subject to rescission for lesion, many of those claims failed. *See* La.R.S. 31:17.

Specifically, in *Cascio v. Twin Cities Development, LLC*, 45,634 (La.App. 2 Cir. 9/22/10), 48 So.3d 341, fraud and error were alleged by the plaintiffs as to the cause of their mineral lease. The court explained that while the mineral lessee had knowledge "of the potential existence of the Haynesville Shale below plaintiffs' property . . . other uncertainties . . . remained." *Id.* at 344. The second circuit concluded that "no finite determination" of the existence and value of minerals

9

found on the property at issue could be made because of the "speculative nature of mineral exploration." *Id.*

The same principle regarding the "speculative nature of mineral exploration" applies here that applied in *Cascio.* Louisiana Revised Statutes 31:6 states that:

> Ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form, or of any elements or compounds in solution, emulsion, or association with such minerals. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership.

In this case, plaintiffs failed to prove the value of their minerals beneath their property by clear and exceedingly strong evidence. Coutret testified that placing a value on the minerals on a tract of land which has no producing well using the "cash flow" method is based on assumptions and a significant degree of speculation. To reach a value, Coutret had to assume the property would be leased and that any well thereon would be successful as well as consider certain probability factors regarding the potential drilling of wells and the potential production from the wells. Coutret based his value on an assumption of production which clearly illustrates what our jurisprudence has recognized as "the speculative nature of mineral exploration." *Cascio*, 48 So.3d at 343 (quoting *Thomas v. Pride Oil & Gas Props., Inc.*, 633 F.Supp. 2d 238 (W.D. La. 2009)).

Additionally, it should be noted that the property at issue lies at the southeastern edge of the existing shale production. At the time of trial of this case, there had not been a lease executed on the property nor were there any offers to lease the property. There were no wells drilled, and there had been no production. Again, the facts of this case point to no other conclusion than Coutret's testimony was pure speculation laced with hopeful thinking.

Coutret relied not only on the assumption that gas might be produced from the property, but also on the value of the gas produced. The gas market fluctuates unpredictably due to any number of contingencies not within the control of the producers or consumers. It is not possible to predict with any reasonable degree of accuracy the value of future gas production because the value of the gas will be dictated by the market at the time of production. Thus, we conclude that Coutret's value of the mineral rights or interests was determined through unsubstantiated assumptions and rank speculation. Further, we find that the trial court erred in relying on Plaintiffs' expert value determination and, in doing so, presumptuously inflated the value of Plaintiffs' interest in the property.

In Louisiana, "[t]he vendor has the burden of proving lesion beyond moiety, and the evidence to establish this fact must be particularly strong and convincing— of such a nature as to exclude speculation and conjecture." *Dosher v. Louisiana Church of God*, 225 La. 21, 25, 71 So.2d 868, 870 (1954) (citations omitted). The expert testimony regarding the value of minerals not yet produced was pure speculation. Landowners do not own fugacious minerals. It is true that the landowner's right to explore for minerals does have a value; however, the record is devoid of evidence upon which this court can determine that value. Thus, the trial court erred in adding to the appraisal value of the property an additional sum for the speculative value of unproduced minerals.

We further note that La.R.S. 31:17, which provides that "[a] sale of a mineral right is not subject to rescission for lesion beyond moiety[,]" is inapplicable to the matter before us. Nevertheless, the reasoning involved as to the ability to evaluate the value of unproduced minerals is the same. As explained in *Fernandez v. Wilkinson*, 158 La. 137, 147-48, 103 So. 537, 541 (1925) (citing

11

*Wilkins v. Nelson*, 155 La. 807, 99 So. 607 (1924)), the nature of minerals is such that they are "not susceptible of having any intrinsic, determinable, and fixable value; that any value which might be fixed on them would only be speculative and conjectural."

The best evidence as to the fair market value of the property was presented by Plaintiffs' expert, Scott Adcock, a real estate appraiser. His appraisal reflects a fair market value of $166,400.00 for Plaintiffs' undivided 35.764% interest in the land and timber sold to Defendants. This is less than the $175,000.00 Defendants paid for the property. Adcock's appraisal does not include the speculative value of any mineral rights or interests. We accept this method of valuation as proper and his appraisal of the fair market value of the property as correct. Therefore, Plaintiffs failed to prove that the sale to Defendants is lesionary.

Accordingly, the trial court was manifestly erroneous in finding the value of the property to include the speculative value of unproduced mineral rights or interests.

### Assignment of Error Number Two

In their second assignment of error, Defendants contend that the trial court committed legal error and manifest error in its fact finding: (a) by valuing the property as a mineral-producing property rather than a recreational property; (b) by failing to recognize the problems in the Coutret Report; and (c) by valuing the property in a state different than it was in at the time of the challenged transaction.

In its reasons for ruling, the trial court did not specifically find that the property should be valued as a mineral-producing property as opposed to an agricultural/timber/recreational property. As stated previously, although it is true

that a landowner's right to explore for minerals has a value, the record is devoid of evidence upon which this court can determine that value.

The trial court erred in considering the speculative value of unproduced minerals in determining the value of the property. Therefore, Plaintiffs failed to prove that their property should be valued as a mineral-producing property.

We note that the trial court was greatly influenced by the testimony of plaintiff's expert, Coutret. In its reasons for ruling, the trial court concluded that his qualifications "were without question." The trial court stated that he had been a petroleum engineer for fifty-six years and had been a consultant for forty-three years. This court certainly takes no issue with Coutret's education and experience; however, for the reasons previously discussed, we reject Coutret's methodology in terms of his use of unsubstantiated assumptions and rank speculation to arrive at his valuation of the property at issue. Therefore, we find that the trial court erred in accepting Coutret's value of the property wherein he valued the property as mineral-producing. At the time of the sale, the property was more properly valued based upon its use for agriculture, timber, and recreational purposes.

### Assignment of Error Number Three

In their third assignment of error, Defendants assert that the trial court committed manifest error of law and fact by "mixing" the valuation reports of two experts who made different findings and applied different criteria. Defendants contend that the trial court erred in adding to the reports a purported mineral value.

The trial court accepted Adcock and James Young to provide expert testimony in the field of real estate appraisal. Adcock testified on behalf of Plaintiffs, and Young testified on behalf of Defendants. The trial court found both to be credible witnesses who testified concerning their methodology and approach.

13

The trial court accepted Young's value of the property alone, which was $607,500.00.

The trial court noted that after appraising the property alone, Young included the timber appraisal purportedly submitted by Richard Gates, Defendants' forester. The trial court assumed that Young was "simply told to include the timber value given to him." It rejected Gates' timber appraisal and accepted the timber appraisal submitted by Ronald Prewitt, Plaintiffs' expert forester, in the amount $269,453.00. The trial court combined Young's property value with Prewitt's timber value for a total of $876,953.00 ($607,500.00 + $269,453.00).

According to its reasons for ruling, the trial court noted that, because Plaintiffs owned a minority ownership interest, Young believed that the total value of the land and timber should be discounted by 50%, whereas Adcock suggested only a 40% discount. The trial court accepted Adcock's suggestion which resulted in a $526,171.80 ($876,953.00 x 60%) valuation of the land and timber. It then noted that the Sisters' ownership interest in the property was 35.764%. The trial court found that an undivided 35.764% interest in the property and timber was $188,180.08 ($526,171.80 x .35764). The trial court added the interest in the property and timber ($188,180.08) to the mineral interest ($673,881.00) for a total valuation of $862,061.08.

For all the reasons discussed above, the trial court was manifestly erroneous when it added the alleged value of the mineral rights ($673,881.00) to the value of the land and timber ($188,180.08), since there is no valid basis for the value of the mineral rights.

## Assignment of Error Number Four

Defendants contend that the trial court committed an error of law in denying and dismissing their demand that the Cason Deed be declared null and void and to reform the King Deed.

The trial court held the sale to be lesionary and, thereafter, denied and dismissed Defendants' claim relative to both deeds. This court concludes that the sale was not lesionary, and, thus, the Cason deed is null and void. Further, the deed may be reformed where there is an error in the description. *Willson v. Unopened Succession of Davis*, 02-475 (La.App. 3 Cir. 10/30/02), 832 So.2d 360, *writ denied*, 03-108 (La. 4/4/03), 840 So.2d 1214. Either party has a right to a correction of the legal descriptions in land conveyances. *Succession of Jones v. Jones*, 486 So.2d 1124 (La.App. 2 Cir.), *writ denied*, 489 So.2d 249 (La.1986). Accordingly, Defendants are granted the right to reform the King deed.

## Assignment of Error Number Five

In their fifth assignment of error, Defendants contend that the trial court committed legal error and manifest error in its ruling on Plaintiffs' fraud claims.

The trial court's reasons for ruling on this issue provide:

> [T]he Court has found as a matter of fact that Kyle King represented to the Sisters, through Tammy, that there was no timber of value on the Property, which as shown above, is not true. This misrepresentation induced the Sisters to sell the Property to him. The Court also found that Kyle was aware of the Haynesville Shale, and did not tell the Sisters about it.
>
> However, since the Court has ruled that the subject sale should be rescinded on the basis of lesion, the plaintiffs' claim for nullification of the contract on the basis of Kyle King's fraud is moot.

Defendants' argument indicates that the trial court found that they committed fraud. Although the trial court found that Kyle misrepresented to the

Sisters the value of the timber on the property, it did not grant Plaintiffs' relief on the basis of fraud. Therefore, the trial court determined that the fraud claim was moot.

Defendants allege that the trial court erred in finding Plaintiffs' fraud claim as moot insofar as the trial court determined the sale was lesionary. We have determined that the sale was not lesionary as Defendants paid to the Sisters a fair price for their undivided interest in the property at issue. Since we find a fair price was paid, there is no fraud. Thus, this assignment of error is moot.

## Assignment of Error Number Six

Defendants contend that the trial court committed legal error in admitting and excluding certain evidence.

We find that this assignment of error is moot because the transaction is not lesionary.

## DECREE

The judgment rendered by the trial court is reversed. Defendants are granted the right to reform the King deed. All costs of this appeal are assessed against Plaintiffs, Tammy Renea Martin Harruff, Amy Lynn Bilodeau, and Edgar Cason.

**REVERSED.**

16