# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1058

LUCY R. ROMERO, EXECUTRIX OF THE
ESTATE OF DORPHY ROMERO

VERSUS

CLAYTON COLA, SR. AND ANNA COLA

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2014-5793
HONORABLE JULES D. EDWARDS, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Elizabeth A. Pickett, Billy H. Ezell, and Phyllis M. Keaty, Judges.

**Cooks, J., dissents and assigns written reasons.**

**REVERSED AND RENDERED.**

**William A. Repaske**
**Landry, Watkins, Repaske & Breaux**
**Post Office Drawer 12040**
**New Iberia, Louisiana  70560-2040**
**(337) 364-7626**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Lucy R. Romero, Individually and as Executrix of the Estate of Dorphy Romero**

**Clayton Cola, Sr.**
**Anna Cola**
**In Proper Persons**
**1405 Martin Luther King, Apartment 21**
**St. Martinville, Louisiana  70582**
**(337) 714-9270**
**Defendants/Appellees:**
    **Clayton Cola, Sr.**
    **Anna Cola**

**KEATY, Judge.**

The plaintiff appeals a judgment denying her request for damages against the defendants for past due rent, damages to the premises, and reimbursement of utility bills. For the following reasons, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Lucy R. Romero, individually, and as executrix of the estate of Dorphy Adam Romero, (hereafter "Ms. Romero") filed a Petition for Monies Due and for Damages against the defendants, Clayton Cola, Sr., and Anna Cola (hereafter "the Colas") on November 17, 2014. Therein she claimed to be the owner of immovable property located at 834 Heart D Farm Road in Youngsville, Louisiana, (hereafter "the property") which had been leased to the Colas "prior to 1999." Ms. Romero claimed that pursuant to the lease, the Colas agreed to pay monthly rent of $600.00 and to be responsible for paying utilities. At the time the petition was filed, Ms. Romero asserted that the Colas were in arrears of over $18,000.00 in past due rent. According to Ms. Romero, the last payment that the Colas made to her was on May 10, 2014, in the amount of $300.00, in partial payment of the rent due in February 2008. Ms. Romero further claimed that the Colas had failed to pay the monthly utility bills when they became due and that she had paid those bills to prevent the property from deteriorating. Ms. Romero submitted that when the Colas vacated the premises on May 14, 2014, she discovered that the Colas had failed to properly maintain the property and had left it "in a dilapidated and trash strewn condition." As a result, Ms. Romero claimed that the Colas were liable to her for past due rent, reimbursement of the utility bills that she paid on their behalf during the lease term, and damages to the premises.

The Colas answered the petition, in proper person, admitting that the lease agreement made them responsible for paying utilities and that they vacated the premises on May 14, 2014. The matter proceeded to a bench trial on July 13, 2015, following which the trial court rendered oral reasons for judgment, finding that Ms. Romero had not met her burden of proof and, thus, denying her request for damages.

Ms. Romero now appeals, asserting that the trial court erred: 1) in holding that she did not sustain her burden of proving the amount of monthly rent due; 2) in failing to determine the amount of rent due; and, 3) in casting all costs of court upon Ms. Romero. The Colas did not file an appellee brief.

## DISCUSSION

"Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect." *Dugan v. Gen. Servs. Co.*, 01-511, p. 3 (La.App. 3 Cir. 10/31/01), 799 So.2d 760, 763, *writ denied*, 01-3327 (La.3/15/02), 811 So.2d 942. When a "trial court's decision was based on its erroneous application of law . . . its decision is not entitled to deference by the reviewing court." *Id.* When an appellate court finds a reversible error of law, the appellate court "must redetermine the facts de novo from the entire record and render a judgment on the merits." *Id.*

Findings of fact are reviewed under the manifest error rule. *Cormier v. Comeaux,* 98-2378 (La.7/7/99), 748 So.2d 1123. When the review of factual findings of the trial court are at issue, the following two-part analysis applies in order to reverse the fact finder's determinations: (1) a reasonable factual basis must not exist in the record for the finding of the trial court and (2) the record must establish that the finding is manifestly erroneous or clearly wrong. *Id.* Great deference is given to the trial court's determination of the credibility of witnesses, except where "documents or other objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable finder of fact would not credit the witness's story." *Rosell v. ESCO,* 549 So.2d 840, 844-45 (La.1989).

*Harruff v. King*, 13-940, pp. 4-5 (La.App. 3 Cir. 5/14/14), 139 So.3d 1062, 1066, *writ denied,* 14-1685 (La. 11/7/14), 152 So.3d 176.

Louisiana Civil Code Article 2682 provides that "[t]he lessor is bound: (1) To deliver the thing to the lessee; (2) To maintain the thing in a condition suitable for the purpose of which it was leased; and (3) To protect the lessee's peaceful possession for the duration of the lease. Conversely, La.Civ.Code art. 2683 provides, in pertinent part, that "[t]he lessee is bound: (1) To pay the rent in accordance with the agreed terms; (2) To use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and (3) To return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter.

In its oral reasons for judgment, the trial court noted:

> This is a civil case. The plaintiff has the burden of proving each of her claims, and unfortunately, I don't believe she did. I don't believe there is sufficient evidence for me to be convinced that Ms. Lucy Romero was the person who negotiated with the Colas the terms of this lease. So I don't know whether or not she is telling me something that she knows, in terms of the amount of the lease, or whether she's telling me something that her husband told her.

> With regard to the agreement, or purported agreement that the defendants would be responsible to pay all of the utility service, the defendants['] answer agrees to that, admits to paragraph 6. So the defendant has said that she was responsible-- or she and Mr. Cola were responsible for paying the rent. I'm sorry, the utility bills.

> However, there is no way for me to ascertain from these documents which Ms. Romero has provided me with utility bills that total $11,114.01. There is no way I can determine which, if any, of these were not paid by the defendants.

> Finally, with regard to the damages, the plaintiffs have not been able to convince me that the damage, whatever the damage is that's complained of because I'm not sure what that damage is, but in any event, I'm not convinced that it was anything more than normal wear and tear.

> There is no sufficient evidence to support the plaintiff's claim. Judgment for the defense. . . .

*Amount of Monthly Rent*

In her first assignment of error, Ms. Romero contends that the trial court erred in holding that she did not sustain her burden of proving that the rent for the property was $600.00 per month. She submits that because the Colas failed to respond to requests for admission that were properly served upon them, the fact of the property's rental rate of $600.00 per month should be deemed admitted.

Ms. Romero testified at trial that her husband died in 1999 and that the Colas began renting the property before that time pursuant to an oral lease. According to Ms. Romero, the rent had always been set at $600.00 per month. In conjunction with her testimony, counsel for Ms. Romero offered into evidence Exhibit P-1, in globo, which contained copies of "Request[s] for Admission, Interrogatories and Requests for Production" that were propounded upon Mr. and Ms. Cola, along with the certified mail receipts indicating that they were received by Danielle Cola. According to an USPS Tracking notice contained in this exhibit, the discovery was delivered on December 23. 2014. A return receipt shows that the mail was received by Danielle Cola, whom Ms. Romero identified as the Colas' oldest daughter. When offering Exhibit P-1 into evidence, Ms. Romero's counsel told the trial court that "no responses were made" to the discovery. He then remarked: "There's not much I can do about the request for production and the interrogatories but unanswered requests for admissions are deemed admitted." Counsel further noted that he sent a letter to the Colas scheduling a Rule 10.1 conference, but got no response from them. When the trial court asked whether Ms. Cola had any objection to Exhibit P-1 being introduced into evidence, she replied that she "received and filled out information and sent it back to them – to him, to the

office." Thereafter, the trial court noted that Exhibit P-1 was "[a]dmitted without objection."

The following Requests for Admission were propounded on the Colas:

REQUEST FOR ADMISSION NO. 1:

Please admit or deny that you were leasing from Dorphy Romero and/or Lucy Romero the property located at 834 Heart D Farm Road, Youngsville, Louisiana, during the time period January 1, 2000 to May 14, 2014.

REQUEST FOR ADMISSION NO. 2:

Please admit or deny that the monthly rental on the property located at 834 Heart D Farm Road, Youngsville, Louisiana, was $600.00 per month.

REQUEST FOR ADMISSION NO. 3:

Please admit or deny that in addition to payment of rent, you were obligated to pay for utilities while you were leasing the property located at 834 Heart D Farm Road, Youngsville, Louisiana.

REQUEST FOR ADMISSION NO. 4:

Please admit or deny that all of the rent due for your lease of 834 Heart D Farm Road, Youngsville, Louisiana, has not been paid.

REQUEST FOR ADMISSION NO. 5:

Please admit or deny that all of the utility expenses you incurred for your lease of 834 Heart D Farm Road, Youngsville, Louisiana, have not been paid.

In *Dan-Cin Construction Co. v. Thrasher*, 08-1552, pp. 4-5 (La.App. 1 Cir. 2/13/09), 9 So.3d 205, 208, the first circuit held:

[P]ursuant to the Louisiana Code of Civil Procedure, a party may serve upon any other party a written request for the admission of the truth of any relevant matters of fact. *See* LSA–C.C.P. art. 1466. Generally, the matter is deemed admitted if the party to whom the request is directed does not respond within fifteen days after service of the request. LSA–C.C.P. art. 1467. Any matter deemed admitted under Article 1467 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. LSA-C.C.P. art. 1468. . . .

5

> Generally, the courts have given full effect to Articles 1467 and 1468 when there has been a total lack of response to requests for admissions.

The *Dan-Cin* court further held that:

> Because of the very clear language of LSA-C.C.P. arts. 1467 and 1468 and because Dan-Cin failed to file any response to the requests for admission or to seek to withdraw or amend the admissions, the trial court correctly deemed the requests for admission admitted and conclusively established as facts for the purposes of this litigation.

*Id.* at 209.

In this case, the trial court should have "deemed the requests for admission admitted and conclusively established as facts for the purposes of this litigation" or it should have explained why it failed to do so. *Id.* For example, if the trial court was making a credibility call based on Ms. Cola's testimony that she had received and responded to the discovery propounded upon her and her husband, or that it was treating that testimony as an opposition to the requests being deemed admitted, it should have clearly stated as much. Because it failed to do so, we have no other choice but to conclude that the trial court committed an error of law in not deeming as admitted for purposes of this litigation that the rent on the property was $600.00 per month.

### *Total Amount of Rent Due*

In her second assignment of error, Ms. Romero claims that the trial court erred in failing to determine the amount of rent due her from the Colas. According to Ms. Romero, the receipts she submitted into evidence as Exhibit P-3, which were admitted without objection, reflect that the last payment that she received from the Colas was made in April 2014 and was credited toward a partial payment of the February 2008 rent. Therefore, she submits that the trial court should have

6

ordered the Colas to pay her $45,300.00 for the seventy-five and one-half months of back rent that they owed. In support of her argument, Ms. Romero points out that Ms. Cola testified that she and her husband had, at times, "fell short" on their rent.

Although the Colas did not file an appellee brief, Ms. Cola did dispute the plaintiff's claims at trial. Ms. Cola testified that the real reason Ms. Romero sought to evict her family was because Ms. Romero's grandson wanted to move onto the property. She challenged the information on the receipts offered into evidence by Ms. Romero, claiming that they failed to note items that she disputed and things that she and Ms. Romero had verbally agreed to during their frequent conversations when Ms. Romero visited the property. According to Ms. Cola, her family was "up-to-date" on their rent when Ms. Romero sought to evict them. Moreover, she denied that they had ever owed back rent in the amount of $18,000.00 as claimed in the petition for damages. Ms. Cola stated that her family properly maintained the property. More specifically, she testified that they had changed the water heater and replaced the floors in the kitchen, dining room, and one of the bedrooms. Ms. Cola explained that Ms. Romero had agreed to deduct the costs of those items from their rent, but that no such deductions were noted in the evidence submitted by Ms. Romero.

Significantly, Ms. Romero has not assigned as error the trial court's failure to award her damages representing the amount of unpaid utilities she initially claimed to have been owed by the Colas. Therefore, we attach no significance to the fact that the Colas admitted that they had agreed to be responsible for paying the utilities incurred. Likewise, Ms. Romero has not assigned as error on appeal the fact that the trial court failed to award her damages that she claimed the Colas

7

owed her for improperly maintaining the property during the time of the lease and/or for leaving the property in poor condition when they vacated the premises in May 2014.

The back rent sought by Ms. Romero can be properly classified as an item of special damages. In *Lobell v. Rosenberg*, 14-60, pp. 7-8 (La.App. 4 Cir. 1/27/16), __ So.3d __, __ (citations omitted), the fourth circuit noted:

> Unlike general damages, which are not susceptible to exact pecuniary determination, special damages are those that have a ready market value, so that the amount of damages theoretically may be determined with relative certainty. A plaintiff is required to prove special damages by a preponderance of the evidence. . . . An appellate court, in reviewing a trier of fact's conclusions with regards to special damages, must satisfy a two-step process based on the record as a whole: there must be a reasonable factual basis for the trial court's conclusions, and the finding must not be clearly wrong. The contours of this test provide "that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding." *Lobell,* 15-0247, p. 6, —— So.3d at ——, citing *Mart v. Hill,* 505 So.2d 1120, 1127 (La.1987). The reviewing court, accordingly, "must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous." *Id.*

Ms. Romero had the burden of proving the amount of rent she was owed by a preponderance of the evidence. It was not enough for her to simply rely on the deemed admitted requests for admission as proof that the Colas owed a set amount of past-due rent. Exhibit P-3, which the trial court accepted without opposition, consisted of three receipt books that Ms. Romero claimed to have used to record and document the payments given to her by the Colas: the first receipt book was dated 9/28/07 – 5/16/09; the second was dated 1/29/10 – 2/23/11; and the third was dated 3/9/11 – 4/26/14. Ms. Romero indicated on some of the receipts that the cash given to her by the Colas was being credited for rent due as far back as in July 2004. However, no evidence was presented to conclusively prove when the Colas

first began renting the property, and Ms. Romero did not introduce receipts to document any of the rent payments made by the Colas prior to September 28, 2007. Further, while both Ms. Romero and Ms. Cola testified that there was a period of time when the Colas vacated the property before renting it again, there was no evidence given to establish the exact dates of that break in the lease. Given those evidentiary issues, we have calculated how much the Colas paid in rent with reference to the receipts kept by Ms. Romero, simply attributing the amount paid to the rent owed the month that payment was made and keeping a running total of any shortfall and/or credit balances that resulted. For example, the first receipt kept by Ms. Romero was dated September 28, 2007, showing a payment of $195.00, and the second receipt was also dated September 28, 2007, showing a payment of $5.00. Thus, we attributed $200.00 to the September 2007 rent owed by the Colas, which left a shortfall of $400.00 for that month. The receipts in evidence reflected a shortfall of $10,583.49 and a credit balance of $2,883.99. When those amounts are offset, we arrive at a total of $7,699.50 which represents the amount of rent the Colas owed to Ms. Romero at the time they vacated the property. The trial court manifestly erred in failing to award Ms. Romero this amount which the evidence supported as being owed to her by the Colas. Accordingly, we will render judgment against Mr. and Ms. Cola and in favor of Ms. Romero in the amount of $7,699.50.

### *Court Costs*

In her third assignment of error, Ms. Romero prays that should this court reverse the trial court judgment and render judgment in her favor, we should reassess all court costs to the Colas. Because we have granted Ms. Romero the relief that she requests, we hereby reverse the trial court's assessment of court

9

costs against her and instead assess the costs of trial against the Colas. *See* La.Code Civ.P. art. 1920.

**DECREE**

For the forgoing reasons, the trial court judgment denying Lucy R. Romero's request for damages is reversed, and judgment is rendered against Clayton Cola, Sr., and Anna Cola. in favor of Lucy R. Romero in the amount of $7,699.50 plus all costs associated with the trial of this matter. All costs of this appeal are assessed against Clayton Cola, Sr., and Anna Cola.

**REVERSED AND RENDERED.**

**LUCY R. ROMERO, EXECUTRIX OF THE
ESTATE OF DORPHY ROMERO**

**VERSUS**

**CLAYTON COLA, SR. AND ANN COLA**


**COOKS, J., dissenting.**

I dissent from the majority's decision to reverse the trial court's judgment. The trial court was correct in finding Plaintiff failed to meet her burden of proof on her respective claims, and I would affirm the judgment in its entirety.

As to the finding that the trial court committed an error of law in not deeming admitted for purposes of this litigation that the rent on the property was $600.00 per month due to Defendants' purported failure to respond to requests for admission, I disagree for several reasons. First, Ms. Cola testified to the trial court that she did receive and fill out the information requested by Plaintiff. The trial court admitted the Exhibit, but was certainly not bound by the proposed admissions in the exhibit prepared by Plaintiff. This court in *D.H. Holmes Co., Ltd. v. Dronet*, 432 So.2d 1135 (La.App. 3 Cir. 1983), addressed a similar situation where a defendant did not specifically answer the request for admissions, but did deny owing any debt by his answer to the plaintiff's suit for breach of contract. We stated:

> In our view, failure to answer under Article 1467 does not per se result in requests for admissions being deemed an admission of the facts sought to be established. This device should not be applied to a controverted legal issue which goes to the heart of the merits of a case. In this instance, defendant denied he owed any debt to [plaintiff] by his . . . answer to [plaintiff's] petition. It was then

> [plaintiff's] burden to prove each element of its claim. *Entron, Inc. v. Callais Cablevision, Inc.*, 307 So.2d 787 (La.App. 1st Cir.1975).

A similar situation occurred here. While the Colas may not have specifically answered the requests for admissions, they denied owing any past due rent to Ms. Romero in the answer to her petition. Thus, I do not agree that article 1467 should be interpreted to result in the request for admissions by Ms. Romero being deemed an admission of facts sought to be established.

Further, any admission for purposes of this litigation that the rent on the property was $600.00 per month is irrelevant to the trial court's finding that Plaintiff failed to meet her burden of proving how much, if any, rent was not paid by the Colas. The majority opinion specifically states "Ms. Romero had the burden of proving the amount of rent she was owed by a preponderance of the evidence." The only purported evidence in the record were receipts prepared and submitted into the record by Plaintiff. Ms. Cola adamantly disputed any assertion that her family was not up to date on the rent. It is difficult to accept the premise that Plaintiff would allow the Colas to continue residing on the property if they owed over six years of past due rent, as Plaintiff claimed. The trial court clearly found the self-serving receipts provided by Plaintiff did not satisfy her burden. This was certainly a reasonable conclusion and cannot remotely be construed as clearly wrong. The trial court's judgment was correct and should be affirmed.