JEFF RIZZO AND BIG EASY CATERING AND EVENTS, LLC D/B/A SHENANIGANS KITCHEN AND COCKTAILS

VERSUS

LOUISIANA OFFICE OF ALCOHOL AND TOBACCO CONTROL

NO. 21-CA-304

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 815-459, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

August 05, 2022

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg

**PERMANENT INJUNCTION VACATED; JUDGMENT OTHERWISE AFFIRMED**
 **JGG**
 **RAC**
 **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
JEFF RIZZO AND BIG EASY CATERING AND EVENTS, LLC D/B/A
SHENANIGANS KITCHEN AND COCKTAILS
　　　Joseph J. Long

COUNSEL FOR DEFENDANT/APPELLANT,
LOUISIANA OFFICE OF ALCOHOL AND TOBACCO CONTROL
　　　Jon Francis Carmer, Jr.
　　　Linda Pham-Kokinos
　　　Heather M. Royer

AMICUS CURIAE,
JEFF LANDRY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF
THE STATE OF LOUISIANA
　　　Jeffrey M. Landry
　　　Benjamin W. Wallace
　　　Elizabeth B. Murrill

**GRAVOIS, J.**

In this case concerning enforcement of COVID restrictions found in the Governor's emergency COVID proclamations, the Louisiana Office of Alcohol and Tobacco Control (the "ATC") appeals the trial court's April 15, 2021 judgment in favor of plaintiffs, Jeff Rizzo and Big Easy Catering and Events, LLC d/b/a Shenanigans Kitchen and Cocktails ("Shenanigans"), following a trial *de novo* in the district court requested by plaintiffs. In said judgment, the trial court granted Shenanigans' motion for involuntary dismissal, finding that the ATC failed to prove its case to suspend Shenanigans' alcohol permit; vacated the ATC's suspension of Shenanigans' alcohol permit; and issued a permanent injunction against the ATC from enforcing COVID restrictions against Shenanigans on a prospective basis. For the following reasons, we affirm the judgment under review insofar as it granted Shenanigans' motion for involuntary dismissal and vacated the ATC's suspension of Shenanigans' alcohol permit. However, the permanent injunction in favor of Shenanigans and against the ATC is hereby vacated, as discussed below.

## FACTS AND PROCEDURAL BACKGROUND

In response to the SARS-CoV-2 ("COVID") virus global pandemic, Governor John Bel Edwards declared a public health emergency on March 11, 2020 in Proclamation No. 25 JBE 2020. The authority for this and subsequent executive orders originates under the Louisiana Constitution of 1974, the Louisiana Homeland Security and Emergency Assistance and Disaster Act (La. R.S. 29:721, *et seq.*), and the Louisiana Health Emergency Powers Act (La. R.S. 29:760, *et seq.*).

Pertinent to this case, the various proclamations, including the two at issue here, 158 JBE 2020 and 17 JBE 2021, enacted regulations and restrictions directed at business establishments which were designed to mitigate the spread of the virus

by, among other things, setting capacity limits, reducing business hours, requiring social distancing measures, and mandating mask usage at all manner of business establishments where people tended to congregate in significant numbers or in enclosed physical spaces, such as bars and restaurants, churches, hair salons and barber shops, casinos, racetracks, video poker establishments, shopping malls, athletic events, and gyms and athletic facilities. Specific to bars and restaurants with alcohol permits, such as Shenanigans, an additional restriction on business activities was enacted prohibiting the sale or service of alcohol after 11:00 p.m., and the sale and service of alcohol to patrons had to be tableside with patrons remaining seated and masked unless consuming food or drink.

On November 21, 2020, between 1:00 a.m. and 1:30 a.m., ATC agent Timothy Magee visited Shenanigans, which is located in Jefferson Parish at 4612 Quincy Street in Metairie, specifically to check Shenanigans' compliance with COVID restrictions as per the Governor's Proclamation 158 JBE 2020, which contained COVID restrictions in effect on that date applicable to Shenanigans. When ATC agent Magee visited Shenanigans that day, the bar was closed to the public because it was after business hours. Based on his personal observations, Agent Magee determined that Shenanigans was in violation of COVID restrictions by having non-employees inside the bar after hours and selling alcohol after 11:00 p.m., as well as having people not wearing masks. Agent Magee issued a Notice of Suspension to Shenanigans, dated November 21, 2020, citing Shenanigans for violations of "158 JBE 2020; La. R.S. 26:90A(9); La. R.S. 26:90A(13) & La. R.S. 26:286A(13); and La. R.S. 26:91A(1) and 26:287A(8),"[1] immediately suspending

---

[1] La. R.S. 26:90(A)(9) and (A)(13) state: "No person holding a retail dealer's permit, and no person permitted to sell alcoholic beverages at retail to consumers, and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises: … (9) Fail to keep the premises clean and sanitary; … and (13) Permit any disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct, or practices on the licensed premises."

Shenanigans' alcohol permit and ordering Shenanigans to appear at an administrative hearing on December 9, 2020.

On December 3, 2020, the ATC and Shenanigans entered into an agreement entitled "Commissioner's Order," in lieu of an administrative hearing, which by consent allowed Shenanigans to pay $1,500 in fines and reopen immediately, with the remaining 47 days of the original 60-day suspension deferred, such deferral "[to] extend for as long as the current COVID-19 pandemic necessitates the issuance of Executive Orders and/or Proclamations by the Governor's Office concerning the operations of businesses within the State of Louisiana." The agreement stated that the 47-day deferred portion of the suspension period would be immediately imposed if Shenanigans was found, after notice and hearing, to be in violation of COVID restrictions again during the probationary period.[2]

On February 16, 2021, which was Mardi Gras day, Agent Magee again visited Shenanigans, this time accompanied by one of Jefferson Parish's Quality of Life inspectors. At this time, a successive proclamation, 17 JBE 2021, was in effect, which provided for "modified Phase 2" COVID restrictions similar to those

---

Testimony before the trial court established that the "sanitary" violations Agent Magee cited were violations of the Governor's Proclamation's COVID restrictions by failing to observe social distancing and failure to wear masks.

La. R.S. 26:286(A)(13) states: "No person holding a retail dealer's permit, and no person permitted to sell alcoholic beverages at retail to consumers, and no servant, agent, or employee of the permittee shall do any of the following acts upon the licensed premises: Permit any disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct, or practices on the licensed premises."

La. R.S. 26:91(A)(1) states: "In addition to any other causes enumerated in this Chapter, the commissioner may suspend or revoke any permit for any one of the following causes: (1) If the applicant or any of the persons who must possess the same qualifications failed to possess the qualifications required in R.S. 26:80 at the time of application or fails to maintain such qualifications during the licensed year."

La. R.S. 26:287(A)(8) states: "In addition to any other causes enumerated in this Chapter, the commissioner may suspend or revoke any permit for any of the following causes: If the applicant or any of the persons who must possess the same qualifications failed to possess the qualifications required in R.S. 26:280 at the time of application or fails to maintain such qualifications during the licensed year."

[2] The terms of the agreement did not restrict Shenanigans' right to subsequently challenge the legality of the ATC's action against it.

previously in effect on November 21, 2020 under Governor's Proclamation 158 JBE 2020. The agents observed behavior and practices that they determined were in violation of currently applicable COVID restrictions. On February 17, 2021, the ATC formally issued a Notice of Suspension, summarily suspending Shenanigans' alcohol permits. The Notice of Suspension, citing 168 [sic] JBE 2020 and 17 JBE 2021, cited Shenanigans for "2 Counts (2nd Offense) – La. R.S. 26:90A(13) & 26:286A(13)f [sic] for permitting … improper conduct or practices on the licensed premises;[3]·(2nd Offense) La. R.S. 26:90A(9) for having unclean and unsanitary conditions on premises; and (2nd Offense)[4] – La. R.S. 26:91A(1) & 26:287A(8) for failing [to] maintain qualifications required in R.S. 26:80 & 26:280; ATC records indicate that the prior infractions occurred on 11/21/2020."[5]

A mandatory administrative hearing was held on February 25, 2021 before Ernest P. Legier, Jr., the Commissioner of the Office of Alcohol and Tobacco Control. Commissioner Legier determined that there was sufficient evidence to show that Shenanigans had violated the terms of the agreement the parties had entered into on December 3, 2020. The suspension order listed the violations as follows: "1) LRS 26:90(A)13: Improper conduct, 2 counts; 2) LRS 26:90(a)9: Unclean/Unsanitary conditions, 1 count; 3) La. RS. 26:91A(1) & 26:287A(8) – Permit Qualifications Not Met, 1 count." By order on that same date, the commissioner imposed a 47-day license suspension, which was the deferred balance of the 60-day suspension as per the agreement of December 3, 2020.

---

[3] The "improper conduct" observed were violations of the physical distancing measures and capacity limitations found in the Governor's proclamations.

[4] The "sanitary" violations were, again, violations of the COVID restrictions concerning social distancing and mask usage.

[5] La. R.S. 26:80(A)(1) states: "Applicants for state and local permits of all kinds shall demonstrate that they meet all of the following qualifications and conditions: (1) Be a person of good character and reputation and over eighteen years of age. In considering a person's good character or reputation, the commissioner may consider a person's arrests in determining suitability."

Shenanigans filed a petition for a trial *de novo* of the commissioner's ruling in the 24th Judicial District Court on March 8, 2021, pursuant to La. R.S. 26:106(A). Therein, Shenanigans also requested a temporary restraining order, and prayed for a preliminary and permanent injunction and monetary damages for wrongful suspension of its alcohol permit.

A trial *de novo* was held in the district court on March 22, 2021. At the conclusion of the trial, the trial court ruled from the bench, assigning oral reasons, granting Shenanigans' motion for involuntary dismissal, vacating the suspension of Shenanigans' alcohol permit, and granting Shenanigans' request for a permanent injunction, preventing the ATC from enforcing COVID restrictions against Shenanigans prospectively. Shenanigans' request for monetary damages, made in the petition for trial *de novo*, was not addressed. The trial court issued written reasons for judgment on April 5, 2021, adopting its oral reasons for judgment. A judgment was signed on April 15, 2021.[6]

In its reasons for judgment, the trial court found that the case hinged on exactly what statutory authority the ATC was allowed as a state actor under the circumstances presented. The court found that the ATC had cited Shenanigans for violating the COVID restrictions in the Governor's Proclamations, despite the ATC's citation listing Title 26 violations, and that La. R.S. 29:724(E) provided the exclusive penalty for violation of COVID restrictions. Because the statute specifically stated that no further penalties for COVID violations may be imposed, the trial court found that the ATC's suspension of Shenanigans' alcohol permit was

---

[6] This Court determined that because the judgment did not address Shenanigans' claim for monetary damages, and the same was not litigated, the April 15, 2021 judgment was not final and immediately appealable. On January 20, 2022, this Court issued an Interim Opinion remanding the matter to the trial court for certification of the judgment as immediately appealable pursuant to La. C.C.P. arts. 1911 and 1915. The trial court issued an "Agreed Order" certifying the April 15, 2021 judgment as a final judgment, immediately appealable, on April 4, 2022, and the appellate record was supplemented on May 11, 2022. In the "Agreed Order," Shenanigans' claim for monetary damages against the ATC was dismissed without prejudice.

not authorized under either La. R.S. 29:724 or La. R.S. 26:94, and thus vacated the suspension.

Based on the above finding, the trial court further opined that the agreement between the parties entered after the November 21, 2020 COVID violation was based upon the parties' mutual error that the ATC was statutorily authorized to suspend Shenanigans' alcohol permit for COVID violations.[7] The court disagreed that the ATC was statutorily allowed to suspend an alcohol permit for "any conduct" that it deemed improper or a lack of "good character and reputation," that such discretion on the ATC's part was overbroad, and that the COVID violations were not related to issues of public morals.[8]

The ATC filed a motion for a suspensive appeal to this Court on March 31, 2021, as per La. R.S. 26:106(B), which the trial court signed on April 5, 2021.[9] In addition to the briefs filed by the parties to this proceeding, the Office of the Attorney General filed an *amicus curie* brief to this Court.

On appeal, the ATC argues that the trial court erred in granting the involuntary dismissal in favor of Shenanigans, asserting that the trial court erred in finding that the ATC did not have statutory authority to enforce COVID restrictions against Shenanigans, and therefore erred in granting a permanent injunction against the ATC, prospectively preventing it from enforcing COVID restrictions against Shenanigans. The ATC argues that it indeed had statutory authority to suspend Shenanigans' alcohol permit for violation of the Governor's COVID proclamations. The ATC further argues that the trial court erred in nullifying an agreement between the parties on the basis of error of law, which

---

[7] The written judgment of April 15, 2021, however, does not address the agreement.

[8] In its oral reasons for ruling, the court specifically stated that its ruling granting the injunction against the ATC was limited to only Shenanigans and not to any other business not a party to this proceeding.

[9] However, only a devolutive appeal to the appellate court is authorized by La. R.S. 26:106(B).

21-CA-304                                              6

agreement provided the basis for the ATC Commissioner's second suspension of Shenanigans' alcohol permit.

After review of the briefs and the record, we find that within the assigned errors, we are called upon to review two issues: first, whether the trial court was correct in vacating the suspension of Shenanigans' alcohol permit; and second, whether the trial court was correct in granting the permanent injunction against the ATC and in favor of Shenanigans, prohibiting the ATC from prospectively enforcing COVID restrictions against Shenanigans. Upon review, for the following reasons, we affirm the ruling vacating the suspension of Shenanigans' alcohol permit. However, we vacate the permanent injunction against the ATC because the permanent injunction as written does not sufficiently comply with the provisions of La. C.C.P. art. 3605, as described below, but for the reasons assigned, we decline to amend the language of the injunction or to remand the matter to the trial court for amendment of the permanent injunction.

## APPEALS PROCESS AND STANDARD OF REVIEW

The appeals process and standard of review applicable herein is set forth in *Williams v. Par. of St. Bernard*, 15-1105 (La. App. 4 Cir. 12/2/16), 206 So.3d 259, 266, *writ denied*, 16-2280 (La. 2/3/17), 215 So.3d 696, to wit:

> The holder of an alcohol permit who is aggrieved by a decision of the governing body of the municipality or parish or a municipal alcoholic beverage control board to suspend or revoke the permit is entitled to appeal the suspension or revocation to the district court. La. R.S. 33:4788; *see also*, La. R.S. 26:106(A); SBP Ordinances, Ch. 3, Sec. 3-45.[10] The district court shall review the decision of the municipality or parish by trial *de novo*. *Id.*; *see* La. R.S. 26:106; SBP Ordinances Ch. 3, Sec. 3-45; *Bibbins v. City of New Orleans*, 02-1510, p. 12 (La. App. 4 Cir. 5/21/03), 848 So.2d 686, 695; *Brossette v. Alcoholic Beverage Control Bd.*, 611 So.2d 1391, 1394 (La. 1993). In a trial *de novo*, the reviewing court can make its own factual determinations, exercise its own discretion, and substitute its own judgment for that of the governing, decision-making body. *Pardue v. Stephens*, 558 So.2d 1149, 1159-60 (La. App. 1st Cir. 1989); *see also Scott v. Moore*, 214 La. 1090, 1094, 39 So.2d 741, 742 (1949).
>
> On appeal of the district court's judgment, the appellate court reviews the district court's findings under the manifest error or clearly wrong standard of review. *Bibbins*, 02-1510, p. 12, 848 So.2d at 695.

---

[10] The *Williams* case was out of St. Bernard Parish, thus the citation to "SBP Ordinances," which are not themselves applicable to this case, though the statutes in Title 26 are.

If the district court's findings are reasonable in light of the entire record, then the appellate court may not reverse even though if sitting as the trier of fact, it would have weighed the evidence differently. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). Where there are two permissible views of the evidence, then the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

While the district court's factual findings are subject to manifest error review, the appellate court gives no special weight to the district court's findings on questions of law, but exercises its constitutional duty to review questions of law *de novo* and render judgment on the record. *Winston v. Millaud*, 05-0338, p. 5 (La. App. 4 Cir. 4/12/06), 930 So.2d 144, 150. Appellate review of questions of law is simply a determination of whether the trial court was legally correct or legally incorrect in its application of the law. *Richard v. Richard*, 14-1365, p. 3 (La. App. 4 Cir. 6/3/15), 171 So.3d 1097, 1100, *quoting Harruff v. King*, 13-940, p. 4 (La. App. 3 Cir. 5/14/14), 139 So.3d 1062, 1066, *writ denied*, 14-1685 (La. 11/7/14), 152 So.3d 176.

A trial *de novo* of an administrative proceeding is a new trial on the entire case, on both questions of fact and issues of law, conducted as if there had been no trial in the first instance. *Fini v. Alcoholic Beverage Control Bd. for City of Baton Rouge*, 09-0854 (La. App. 1 Cir. 2/10/10), 35 So.3d 301, 304.

## ASSIGNMENTS OF ERROR NUMBERS ONE–THREE

1) The trial court erred in failing to find that the ATC has authority under Title 26 to take administrative action against Shenanigans for violating COVID restrictions in the Governor's Proclamations.

2) The trial court erred in failing to address La. R.S. 26:80(A)(1) and 26:280(A)(1), the statutory provision containing the requirement that persons applying for alcohol permits be of "good character and reputation," and the requirement that permit holders maintain such qualifications under La. R.S. 26:91(A)(1) and 26:287(A)(8).

3) The court erred in ruling that the exclusive penalty for violations of COVID proclamations is contained within La. R.S. 29:724(E).

These three assignments of error are interrelated and will be discussed together.

In these assignments, the ATC argues that it had the statutory authority to take administrative action against Shenanigans, because Shenanigans committed a Title 26 violation in that one of its violations of the COVID regulations involved the sale of alcohol after certain hours as prohibited in the COVID proclamations. The ATC asserts that the enabling statute concerning the COVID-related

proclamations at issue, La. R.S. 29:724(D)(6) found in the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("LHSEAD"), has a specific provision concerning the governor's ability to "suspend or limit the sale, dispensing, or transportation of alcoholic beverages," and the proclamations themselves, which have the force and effect of law under La. R.S. 29:724(A), likewise placed restrictions on establishments permitted to sell alcoholic beverages. Thus, the ATC argues, in violating the COVID restrictions found in the two Governor's proclamations, Shenanigans really committed a Title 26 "alcohol" violation, and the penalty found in La. R.S. 29:724(E) for violating the proclamations is not relevant or exclusive.

Next, the ATC essentially argues that Shenanigans specifically violated La. R.S. 26:80(A)(1) and 26:280(A)(1), which require that persons applying for alcohol permits be of "good character and reputation," when it violated the COVID restrictions in the Governor's Proclamations. The ATC argues that in violating the Governor's COVID restrictions, Shenanigans has shown itself to be lacking the requisite "good character," which puts its offense within the ambit of Title 26, allowing the ATC to enforce Title 26 remedies against Shenanigans such as suspending its alcohol permit by the use of administrative process.

The record shows that Shenanigans was cited by Agent Magee for violating particular restrictions in the Governor's two COVID proclamations, specifically as noted above, and also for selling alcohol past 11:00 p.m., none of which were prohibited by any law prior to the promulgation of the Governor's emergency proclamations. The proclamations, which covered all manner of establishments, applied specific rules to alcohol permitted establishments. Specifically, 158 JBE 2020 provides, in pertinent part:

SECTION 2: B. LIMITATIONS ON NONESSENTIAL BUSINESSES

\* \* \*

3) Bars shall be allowed to open for on premises consumption under the following conditions:

a) The bar must be located in a parish that has a percent positivity of 5% or less for two consecutive weeks, as determined and published by the Louisiana Department of Health. The governing authority of the parish must affirmatively opt-in to allow on-premises consumption. Should any parish that opts in subsequently exceed 10% positivity for two consecutive weeks, bars in that parish shall then be closed for on-premises consumption, unless and until the percent positivity decreases to 5% or less for two consecutive weeks.

b) No bar operating under this Paragraph shall exceed 25% occupancy, as set by the State Fire Marshal, or 50 patrons, whichever is less.

c) Outdoor service shall be allowed, but in no event can the outdoor seated capacity exceed 50 patrons in total. No standing room capacity shall be permitted.

d) All bars shall be closed by 11 p.m. Therefore, the hours of permissible operation shall be 8 a.m. to 11 p.m.

e) All patrons shall be seated at tables, and all service shall be to patrons seated at tables. No walk-up service at the bar shall be allowed.

f) All seating of patrons shall be socially distanced.

g) No patron shall be allowed on premises unless of the legal age to purchase alcoholic beverages.[11]

The ATC argues that the trial court failed to address La. R.S. 26:792(3), which states that "the commissioner shall have all of the powers and authorities provided in this Title in relation to: … (3) All other provisions of law regarding beverages of high or low alcoholic content, except as hereinafter specifically provided," which the ATC argues gives it the authority under Title 26 to take "administrative action" against Shenanigans for violating the Governor's COVID

---

[11] Pertinent to this case, the restrictions in the successive proclamation at issue are similar but with different occupancy limits.

proclamations. The ATC argues that the emergency proclamations did not take away its prior statutory authority to otherwise regulate permitted establishments.

Resolution of these assignments of error requires statutory interpretation. It is a fundamental principle of statutory interpretation that when a "law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. When the wording of a statute is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4. The rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. *City of Pineville v. Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO, Loc. 3352*, 00-1983 (La. 6/29/01), 791 So.2d 609, 612.

The statutory scheme regulating the application for, issuance of, and suspension and revocation of alcohol permits is found in Title 26. The ATC is a state agency that was created by the Louisiana Legislature and its empowering statutes are La. R.S. 26:791-792.[12] Title 26 *generally* grants the ATC the authority to enforce the State's alcohol permitting regime. Accordingly, the ATC through its commissioner has the statutory power to grant applicants a permit to sell alcohol, to renew those permits, and to suspend and revoke them, for violations of statutes in Title 26. However, the method of revoking a permit must be rigidly followed by

---

[12] Thus, we disagree with the ATC's argument that its authority to regulate the sale of alcohol derives from the United States Constitution or the 21st Amendment thereto.

those who seek to make the revocation in order to ensure the right of due process to the holder of the permit. *Williams v. Par. of St. Bernard*, 206 So.3d at 269.[13]

The ATC argues that it has the statutory authority to suspend Shenanigans' alcohol permit for violation of the Governor's COVID proclamations (which are not found in Title 26), under La. R.S. 26:792 which states, in pertinent part:

> The commissioner shall have all of the powers and authorities *provided in this Title* in relation to:
>
> * * *
>
> (2) The issuance of orders for the suspension or revocation of permits issued to persons engaging in the business of dealing in beverages of high or low alcoholic content, and all hearings thereon shall be conducted by the commissioner in accordance with the provisions of R.S. 26:98 through R.S. 26:108, appeals from his rulings to be made directly to any court of competent jurisdiction;
>
> (3) *All other provisions of law regarding beverages of high or low alcoholic content, except as hereinafter specifically provided.*
>
> (Emphasis added.)

The ATC argues that the trial court erred in failing to address or reference this statute. The ATC claims in brief that it has authority under Title 26 to take administrative action and to enforce administrative penalties against Shenanigans for violating COVID-related proclamations of the Governor's Office, because these proclamations include provisions of law related to alcoholic beverages.[14]

Upon review, we find that the plain language of La. R.S. 26:792 states otherwise. The first line of this statute limits the commissioner to "all of the powers and authorities *provided in this Title* … ." La. R.S. 26:94, located in this Title, specifically states that "No permit shall be withheld, suspended, or revoked except for causes specified in this Chapter." COVID restrictions are not found in

---

[13] We note that the ATC suspended the permit summarily under the authority granted to it in La. R.S. 46:961(C), as noted in the Notice of Suspension issued to Shenanigans on February 17, 2021.

[14] We note, however, that except for the violation of the COVID proclamation concerning sales of alcohol after 11:00 p.m., Shenanigans' COVID violations did not concern alcohol usage or sales.

Title 26; they are found in the Governor's proclamations regarding the statewide public health emergency, the authority for which is provided by two statutes in Title 29, the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:721 *et seq.*, and the Louisiana Health Emergency Powers Act, La. R.S. 29:760, *et seq.*

Further, the fact that portions of the emergency proclamations placed limitations on the sale of alcohol does not, in and of itself, place that particular COVID restriction within the ambit of Title 26. The specific restriction in the Governor's proclamations relative to alcohol sales, the prohibition against selling alcohol past 11 p.m., is not found in Title 26. It was promulgated specifically in response to the statewide public health emergency, not relative to general concerns regarding public morals. The restrictions on alcohol sales in the Governor's proclamations limit the sales of alcohol only as specified therein and only tangentially as part of a comprehensive COVID mitigation strategy, and only for as long as the emergency proclamations are in effect.

Next, the ATC argues that the trial court erred in failing to address La. R.S. 26:80(A)(1) and 26:280(A)(1), the statutory provisions containing the requirement that persons applying for alcohol permits be of "good character and reputation," and the requirement that permit holders maintain such qualifications under La. R.S. 26:91(A)(1) and 26:287(A)(8). The ATC argues that Shenanigans' COVID violations impugned its "good character and reputation," thus allowing the ATC to suspend Shenanigans' alcohol permit under the above statutes. The trial court disagreed. So do we.

Both La. R.S. 26:80(A)(1) and 26:280(A)(1), which address the qualifications of *applicants* for permits, identically state that an applicant "shall demonstrate that they meet the following qualifications and conditions: (1) Be a person of good character and reputation and over eighteen years of age. In

considering a person's good character or reputation, the commissioner may

consider a person's arrests in determining suitability."[15]  La. R.S. 26:91(A)(1) and

La. R.S. 26:287(A)(8) identically state that "… the commissioner may suspend or

revoke any permit for any of the following causes: (1) If the applicant or any of the

persons who must possess the same qualifications failed to possess the

qualifications required in R.S. 26:280 at the time of application or fails to maintain

such qualifications during the licensed year."

The trial court, however, did address this issue in its oral reasons for

judgment.  In its ruling at the conclusion of the hearing, the trial court stated:

> I would also specifically disagree that the ATC is allowed to
> suspend for any conduct it deems improper.  And I disagree with that
> based on the plain language and the syntax of the statute as the Court
> had read earlier which is that permitting any disturbance of the peace
> or obscenity or any lewd, immoral, improper entertainment conduct
> practices on the licensed premises.

> ATC says any conduct they deem improper, I would disagree and I
> would have to say that would torture the plain intent and the meaning
> of that statute.  I don't think that that statute gives them a broad
> discretion to say we believe this is improper and therefore we are
> going to and I'm going to go to the absurd notions of murder or things
> that are acceptably contra bonos mores, that's not what we're talking
> about here.  We're talking about things that do not have to do with the
> public morals.  I don't think this would apply even [ ] to a violation of
> the Covid guidelines.  I disagree that the ATC can even self determine
> the breadth of its authority by making a public policy argument which
> is what it has done however well intentioned that argument may be in
> light of the days that we are currently living in and so for that reason I
> am granting plaintiff's motion for an involuntary dismissal.

Upon review, we find no error in the trial court's determination that the

ATC's interpretation of its statutory legal authority under Title 26 is subjective,

undefined, overbroad, and otherwise unsupported.  Statutory law does not support

the ATC's position that the terms "good character and reputation" that a permit

holder must have to be granted a permit and must maintain in order to avoid a

---

[15] La. R.S. 26:80 is found in Chapter 1, Part II of Title 26, entitled "Alcoholic Beverage
Control Law, Permits," as is La. R.S. 26:90.  La. R.S. 26:280 is found in Chapter 2, Part II of
Title 26, entitled "Alcoholic Beverage Control and Taxation, Permits for Dealers in Beverages of
Low Alcoholic Content," as is La. R.S. 26:287.

suspension of a permit, necessarily include violations of the Governor's emergency proclamations at issue here. As noted above, the ATC is specifically restricted by La. R.S. 26:94, which specifically states that "No permit shall be withheld, suspended, or revoked except for causes specified in this Chapter." Likewise, the ATC provides no case law support for its "good character and reputation" argument to the case at bar. We find no error in the trial court's conclusion that these terms as used in the permitting scheme set forth in Title 26 do not encompass violations of the COVID restrictions in the Governor's proclamations.[16]

Next, the ATC argues that the trial court erred in ruling that the exclusive penalty for violations of COVID-related executive orders and/or proclamations issued by the Governor's Office is contained within La. R.S. 29:724(E). The ATC argues that if the court had properly addressed the statutes referenced in the preceding assignments of error, it would have been unable to avoid the conclusion that the ATC has the authority to impose administrative penalties, which include suspensions and/or revocations of alcohol permits, under Title 26, and that the penalty referenced in La. R.S. 29:724(E) is wholly irrelevant and has no bearing on this matter. The ATC essentially argues that the emergency proclamations do not take away its rights under Title 26 to regulate permitted establishments.

---

[16] While there is a dearth of case law on the issue of what constitutes "good character and reputation," the case of *Karlsson v. City of New Orleans Through Bureau of Revenue*, 145 So.2d 659, 660-61 (La. App. 4 Cir. 1962) is instructive. There, the court found that lying on a permit application and evidence of prostitution on a bar's premises supported revocation and/or denial of an alcohol permit as violations of Title 26's requirements of "good character and reputation."

Furthermore, as this Court recently stated in *5216 Operations, LLC v. Dep't of Revenue, Off. of Alcohol & Tobacco Control*, 21-520, p. 12 (La. App. 5 Cir. 4/6/22), 2022 WL 1025881:

> … There is nothing in La. R.S. 26:90 to put a permit holder on notice that violating the COVID restrictions in the governor's proclamation would be considered "lewd, immoral, or improper entertainment, conduct, or practices." Furthermore, to allow "improper" to stand by itself would encompass subjective conduct without a standard to put a person of "ordinary intelligence" on notice and would implicate constitutional issues of vagueness and arbitrary and discriminatory application. See *Med Exp. Ambulance Serv., Inc. v. Evangeline Par. Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359, 367-68 (ordinances will be considered vague if no standard conduct is specified; ordinances must provide sufficient clarity to remove the decision of whether to grant or deny a permit from the police jury's subjective whim). …

As previously noted, we have found no merit to the ATC's assertion that the trial court either failed to address these statutes or erred in finding that the ATC lacks statutory authority under La. R.S. 26:80(A)(1) and 26:280(A)(1) and La. R.S. 26:91(A)(1) and 26:287(A)(8) to find that COVID violations are examples of lack of "good character and reputation" sufficient to suspend an alcohol permit, or that otherwise, the ATC is statutorily empowered under Title 26 to suspend Shenanigans' alcohol permit for COVID violations. We agree that nothing in the emergency proclamations, nor their enabling statutes, takes away the ATC's authority to regulate permitted establishments for violations of laws within Title 26. However, in this case, despite attaching the COVID violations to statutes in Title 26 in the notice of suspension, it is clear that the ATC was not citing Shenanigans for violations of Title 26 statutes because the specific violations of the COVID restrictions do not exist under Title 26.

La. R.S. 29:724(E) provides the penalty to be imposed on those found to have violated restrictions found in a Governor's proclamation issued pursuant to a declared emergency:

> E. In the event of an emergency declared by the governor pursuant to this Chapter, any person or representative of any firm, partnership, or corporation violating any order, rule, or regulation promulgated pursuant to this Chapter, shall be fined not more than five hundred dollars or confined in the parish jail for not more than six months, or both. No executive order, proclamation, or regulation shall create or define a crime or fix penalties.

The penalty referenced in La. R.S. 29:724(E), which makes a violation a criminal misdemeanor, is relevant, applicable, and exclusive to violations of the COVID restrictions found in the Governor's proclamations. La. R.S. 29:724, entitled "Powers of the Governor" and which is found in The Louisiana Homeland Security and Emergency Assistance and Disaster Act, specifically empowers the governor to issue executive orders, proclamations, and regulations (and amend or rescind them), which shall have the force and effect of law, in order to meet the dangers to

the state and people presented by emergencies or disasters. The governor's two proclamations at issue here, 158 JBE 2020 and 17 JBE 2021, specifically state that they were promulgated pursuant to the authority granted to him by La. R.S. 29:724 and 29:760 in response to the ongoing public health emergency caused by the COVID virus.

La. R.S. 29:724(E) specifically provides the <u>exclusive</u> penalties for violations of a rule, order, or regulation promulgated pursuant to this Chapter. Under this statute, the governor, in any proclamation issued pursuant thereto, is not allowed to create or define a crime or fix penalties for violations of his emergency proclamations. The power to define crimes and/or fix penalties clearly resides in the Legislature, who passed this Act and specified the penalties. The penalties found in La. R.S. 29:724(E) are specific to violations of a governor's emergency proclamation. The penalty the ATC seeks to enforce, suspension of the alcohol permit, is only allowed for specific violations found in Title 26, as per La. R.S. 26:94, not violations of the Governor's emergency proclamations, and therefore was properly vacated by the trial court.[17]

These assignments of error are without merit.

### ASSIGNMENT OF ERROR NUMBER FOUR

In its final assignment of error, the ATC alleges that the trial court erred in finding that an error of "belief of the parties" vitiated the cause for both the ATC and Shenanigans entering into the agreement that resolved the initial administrative violation. The ATC argues that "[t]here could be no such error of belief because the ATC has the inherent authority to regulate the time, place and manner of

---

[17] *See also 5216 Operations, LLC v. Dep't of Revenue, Off. of Alcohol & Tobacco Control*, 21-520, p. 16 (La. App. 5 Cir. 4/6/22), 2022 WL 1025881, wherein this Court stated: "While the ATC does have authority to impose penalties for violations of the provisions of Title 26, we find that the conduct sought to be penalized herein does not fall within Title 26's alcohol violations, but, rather, is conduct prohibited by the governor's mandate for which La. R.S. 29:724(E) sets forth the appropriate punishment."

alcohol permitted establishments, and Shenanigans was obligated to adhere to COVID restrictions contained within Governor Edwards' proclamations regardless of the consent decree's existence."

As found above, the ATC did not have the authority, inherent or statutory, to suspend Shenanigans' alcohol permit for violations of the COVID restrictions in the emergency proclamations. The evidence shows that both parties to the agreement were under the mistaken belief that the ATC had the power to enforce the Governor's COVID restrictions as found therein, and that such enforcement included the imposition of the penalty of suspension of Shenanigans' alcohol permit.

It is argued that the agreement that the parties entered into on December 3, 2020 is a contract between them. Consent to a contract may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. La. C.C. art. 1950.

The evidence is clear that both parties believed that the ATC was empowered to enforce the COVID restrictions by suspending Shenanigans' alcohol permit, and that as found above, this belief was in error, and constitutes an error of cause. We thus find that the trial court did not err in nullifying the agreement on that basis.

This assignment of error is likewise without merit.

### GRANT OF INJUNCTIVE RELIEF BY THE TRIAL COURT

We are also called upon to decide whether the trial court was correct in granting injunctive relief against the ATC and in favor of Shenanigans, prohibiting the ATC from prospectively enforcing COVID restrictions against Shenanigans.

21-CA-304                                                    18

The Supreme Court, in *Jurisich v. Jenkins,* 99-0076 (La.10/19/99), 749 So.2d 597, 599, set forth the exception to the irreparable harm requirement for the grant of injunctive relief as follows:

> A petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. *South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 555 So.2d 1370 (La. 1990). Once a plaintiff has made a *prima facie* showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists.

The Governor's emergency proclamations have the force and effect of law. La. R.S. 29:724(A). The pertinent emergency proclamations, by their own explicit terms, do not grant the ATC the power to *enforce* the COVID restrictions found therein, or to impose penalties. Instead, they expressly grant that power to "[t]he Governor's Office of Homeland Security and Emergency Preparedness [GOHSEP] and the State Fire Marshal."

158 JBE 2020 states, in Sections 4 and 5:

> SECTION 4: The Governor's Office of Homeland Security and Emergency Preparedness and the State Fire Marshal are directed to ensure compliance with this order, and are empowered to exercise all authorities pursuant to La. R.S. 29:721, et seq., and La. R.S. 29:760, et seq.

> SECTION 5: All departments, commissions, boards, agencies and officers of the state, or any political subdivision thereof, are authorized and directed to cooperate in actions the state may take in response to the effects of this event.

17 JBE 2021 states, in Sections 5 and 6:

> SECTION 5: The Governor's Office of Homeland Security and Emergency Preparedness and the State Fire Marshal are directed to ensure compliance with this order, and are empowered to exercise all authorities pursuant to La. R.S. 29:721, et seq., and La. R.S. 29:760, et seq.

> SECTION 6: All departments, commissions, boards, agencies and officers of the state, or any political subdivision thereof, are authorized and directed to cooperate in actions the state may take in response to the effects of this event.

The Health Emergency Act expressly directs the director of GOHSEP and the State Fire Marshal to enforce public health emergency declarations. La. R.S. 29:767. La. R.S. 29:766(D), Emergency Powers, states that "[d]uring a state of public health emergency, in addition to any powers conferred upon the governor by law, he may do any or all of the following: … (2) Utilize all available resources of the state government and of each political subdivision of the state as reasonably necessary to cope with the disaster or emergency."

The language in Section 5 of 158 JBE 2020 and Section 6 of 17 JBE 2021, which authorizes and directs "all departments, commissions, boards, agencies and officers of the state, or any political subdivision thereof" to "cooperate in actions the state may take in response to the effects of this event," falls short of empowering the ATC, a state agency, to *enforce* the COVID restrictions found in the governor's proclamations, or to *impose* the penalties in La. R.S. 29:724(E). Without a specific directive in the proclamations, the ATC was not empowered by the Governor to *enforce* compliance with the provisions of these proclamations. Thus, Shenanigans was not required to show irreparable harm in order for the trial court to grant injunctive relief herein.

However, the trial court's permanent injunction language as written does not identify the specific emergency proclamations that the ATC is enjoined from enforcing against Shenanigans. The judgment states that "a permanent injunction is granted in favor of Shenanigans and against the ATC prohibiting the ATC from COVID enforcement against Shenanigans." La. C.C.P. art. 3605 provides that "an order granting either a preliminary or final injunction … shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained." The injunction should have specifically identified the two emergency proclamations at issue, rather than express a general prohibition against enforcement of any and all COVID proclamations, including

any potential proclamations that may be issued in the future. Therefore, the injunction is impermissibly vague, overbroad, and does not conform to the requirements of La. C.C.P. art. 3605. Given that experts have indicated that they believe that COVID will be an issue for the foreseeable and possibly permanent future, forthcoming proclamations regarding COVID are indeed a distinct possibility.

Because future emergency proclamations regarding COVID may use language that corrects the deficiencies identified in this opinion that prevents the ATC from enforcement of the proclamations, the permanent injunction as written may enjoin the ATC from enforcement of future COVID proclamations against Shenanigans, even though the ATC may be authorized to enforce those same restrictions against all other entities similar to Shenanigans.

Accordingly, because the permanent injunction as written does not sufficiently comply with the provisions of La. C.C.P. art. 3605, the permanent injunction is hereby vacated. However, because the two emergency proclamations involved in this case have expired, and enforcement as to those proclamations is now moot, we decline to amend the language of the permanent injunction, and also decline to alternatively remand the matter to the trial court for amendment of the permanent injunction.[18]

---

[18] While a case challenging a statute or executive order may become moot if the challenged law has expired, this case did not challenge the governor's executive order, but rather the ATC's authority under Title 26 to enforce that order. Furthermore, La. R.S. 29:724(E), which contains the permissible penalty for violations of emergency proclamations, is still in effect. Although at the time of this opinion, the governor's emergency orders have all expired, we find that this is not an abstract issue, as these issues could re-arise in the event of a future emergency declaration.

## **DECREE**

For the foregoing reasons, the judgment appealed from is affirmed in all respects, except that the permanent injunction issued in favor of Shenanigans and against the ATC is vacated.

**PERMANENT INJUNCTION VACATED; JUDGMENT OTHERWISE AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 5, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-304

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
JOSEPH J. LONG (APPELLEE)          JON FRANCIS CARMER, JR. (APPELLANT)          BENJAMIN W. WALLACE (AMICUS)
ELIZABETH B. MURRILL (AMICUS)

**MAILED**
HEATHER M. ROYER (APPELLANT)          HONORABLE JEFFREY M. LANDRY
LINDA PHAM-KOKINOS (APPELLANT)        (AMICUS)
ATTORNEY AT LAW                       ATTORNEY GENERAL
7979 INDEPENDENCE BOULEVARD           LOUISIANA DEPARTMENT OF JUSTICE
SUITE 101                             1885 NORTH 3RD STREET
BATON ROUGE, LA 70806                 6TH FLOOR, LIVINGSTON BUILDING
                                      BATON ROUGE, LA 70802